Bank *v.* Lumber and Manufacturing Co.

BANK *v.* LUMBER AND MANUFACTURING CO.

(*Knoxville.*    November 17, 1891.)

1. CORPORATIONS.    *Not insolvent, when.*

A corporation is not insolvent in such sense that its assets become a fixed trust fund in the hands of its officers for *pro rata* distribution among its creditors, so long as it continues to be a going concern, conducting its business in the ordinary way, although its debts may greatly exceed its assets.

Cases cited and approved: Moseby *v.* Williamson, 5 Heis., 278; Comfort *v.* McTeer, 7 Lea, 660.

2. ATTACHMENT.    *Of assets of insolvent corporation.*

And attachment for sufficient cause of the assets of such indebted corporation by some of its creditors secures them priority over other creditors, although the corporation subsequently commits a decisive act of insolvency, as, *e. g.*, by general assignment and cessation of business.

FROM MARION.

Appeal from Chancery Court of Marion County. T. M. McCONNELL, Ch.

W. T. MURRAY and FRANK SPURLOCK for Bank.

BROWN & SPEARS, ANDREWS & BARTON, BRIGHT & EARLY, and BYRON POPE for Company.

TURNEY, Ch. J.   The North Alabama Lumber and Manufacturing Company was a corporation doing business in Alabama and Tennessee, its chief office at Bridgeport.   On September 2, 1889, its liabilities were $208,857.   By subsequent sales there were realized $24,898, which constituted its entire assets.   On September 30, 1889, the City Savings Bank and others attached the property in Tennessee.   On October 7 the First National Bank of Tullahoma filed a similar bill.   Other bills were subsequently filed, aggregating perhaps a dozen. The defendant company was in full operation, transacting its usual business, in possession of its property, and running its plant in the State of Alabama up to October 3, 1889, when its property was levied upon at the instance of the City Savings Bank by attachment issued from the Federal Court at Huntsville.   On October 14, 1889, defendant company made a general assignment.   On October 11 the company and the City Savings Bank entered into an agreement, the company to confess judgment in favor of the bank in the cause at Huntsville for $17,191.78, the property attached to be condemned and sold for satisfaction of the amount decreed; that the company should make a general assignment of all its property in both States, with power of sale, and to satisfy first out of the Alabama property the Alabama

judgment; that the company should confess a judgment in favor of the bank for $3,500 in the proceedings in Tennessee, to be first paid out of the Tennessee property.

On August 20, 1890, the First National Bank of Tullahoma filed a bill against all the other attaching creditors and the Lumber and Manufacturing Company, charging that at the date of the attachments it was insolvent; that the attachments did not secure priority of payment, and the property must be held in trust for the payment of all creditors.

"A creditor of an insolvent corporation is entitled to pursue the ordinary legal and equitable remedies for the enforcement of his claims, unless he is restrained from doing so at the suit of the corporation or of other creditors. Neither the corporation or other creditors would be able to prevent him from pursuing the ordinary remedies given to creditors, except by instituting proceedings for the purpose of securing a general distribution of the company's assets," etc. 2 Morawetz on Private Corporations, 364.

There were, at the time of the filing of the attachment bill, no evidences of insolvency, and none charged. The grounds charged are non-residence and fraudulent disposition, and seeking an ordinary remedy.

In *Moseby* v. *Williamson*, 5 Heis., 278, Nicholson, Ch. J., said: "It appears in proof that plaintiff became creditor of the savings institution after it closed and suspended, but before steps

were taken to wind it up as an insolvent corporation. It is provided by the bankrupt law that if a bank stops or suspends fraudulently for a period of fourteen days it is deemed to have committed an act of bankruptcy, but if the suspension be not fraudulent, it is not an act of bankruptcy. In analogy to this rule as to bankruptcy, we cannot see upon what ground the insolvency can be assumed from the simple fact of closing its doors for two or three days, or until some such step as filing a bill to have its insolvency determined has been taken."

"There must be some positive act of insolvency, such as the filing of a bill to administer the assets, or the making of a general assignment or a permanent cessation to do business." *Comfort* v. *Mc-Teer*, 7 Lea, 660.

In the present case there was no stop, no suspension of business, no closing of doors; on the contrary, there was no lack of active operation on the part of the company, and its officers were hopeful of success.

The assets of a corporation are a trust fund for the benefit of creditors only from the date of assured insolvency, and a creditor having a right to sue in one of the ordinary ways at law or in equity, not suggesting insolvency, is not to be deprived of the fruits of his action because insolvency may thereby be brought about or hastened.

Decree reversed, and decree here giving creditors priority in the order of their several attachments.