W. D. HICKS *et al.* v. WM. S. WHITING *et al.*

(*Knoxville.* September Term, 1923.)

1. CORPORATIONS. Evidence held not to show breach of agreement to assume obligations of another corporation.

In an action against corporations and individuals, evidence *held* not to show that corporation taking over assets of debtor corporation breached its agreement to assume as its own obligations any recoveries that complainants might have against the corporation whose assets were taken over. (*Post, p.* 443.)

2. CORPORATIONS. Remedy for breach of contract to assume indebtedness of another corporation whose assets were taken over stated.

If a corporation taking over the assets of another corporation breached its contract to assume and pay recoveries against the corporation whose assets were taken over, the remedy of creditors who were parties to the agreement was not rescission, but the right of suit against the corporation assuming liability. (*Post, p.* 443.)

3. CORPORATIONS. Taking over of assets of another corporation held not shown fraudulent.

A finding by chancellor of fraud in the conveyance of property and assets of one corporation to another *held* not supported by evidence or facts, conveyance being open and above-board and manifestly in the interest of creditors. (*Post, p.* 443.)

4. CORPORATIONS. Burden of proof on creditors to establish fraud in conveyance of assets to another corporation.

In action by creditors against corporations, the burden of proof was on complainants to establish fraud in a conveyance of assets by one of the corporations to the other; the burden being on com-

plainants to establish the fact of intentional fraud or insufficient consideration, under Acts 1919, chapter 125, section 7. (*Post, p.* 443.

Acts cited and construed: Acts 1919, ch. 125, sec. 7.

Cases cited and approved: Gaugh v. Henderson, 39 Tenn., 629; Bank v. McAdams, 106 Tenn., 404.

5. **CORPORATIONS.** Fact that corporation conveyed all of its property held no evidence of fracd.

The fact that debtor corporation conveyed all of its property to another corporation in an effort to settle its debts and for a consideration in excess of the reasonable value of same is no evidence of fraud. (*Post, pp.* 443, 444.)

6. **CORPORATIONS.** Corporation may dispose of all of its assets for fair consideration.

A corporation may dispose of all of its assets and property by sale or transfer for a fair consideration; the consideration being held for creditors. (*Post, pp.* 444, 445.)

Cases cited and approved: Haight v. Smith, 178 Mich., 392;) Jennings, Neff & Co. v. Crystal Ice Co., 128 Tenn., 231; Vance v. McNabb Coal Co., 92 Tenn., 47; Long v. Fisher Typewriter Co., 1 Tenn., Ch. App., 668.

Cases cited and distinguished: Kingman v. Mowry, 182 Ill., 256; Byrne & Hammer Dry Goods Co. v. Willis-Dunn Co., 23 S. D., 221.

7. **CORPORATIONS.** Company held not to have committed overt act of insolvency by calling creditors' meeting.

A corporation did not commit an overt act of insolvency by calling a creditors' meeting for a conference looking to an adjustment of its indebtedness where it continued to be a going concern. (*Post, pp.* 445-452.

8. **CORPORATIONS.** Creditors held not entitled to invoke trust fund doctrine as to property sold by corporation.

Hicks v. Whiting.

If a corporation committed an overt act of insolvency by calling a creditors' meeting for a conference looking to an adjustment of its indebtedness, creditors who subsequently signed an agreement binding the corporation to pursue a readjustment plan and transfer its assets, and stood by with the full knowledge of the purpose to convey, and permitted such conveyance to be made, cannot now invoke the trust fund doctrine and reach the assets so sold upon the theory that such assets were impressed with a lien by the act of insolvency. (*Post, pp.* 445-452.)

9. **CORPORATIONS.** Trust fund doctrine inapplicable where corporation continues in operation, though indebted to insolvency.

A corporation is not insolvent in such sense that its assets become a fixed trust fund in the hands of its officers for *pro rata* distribution among its creditors so long as it continues to be a going concern, conducting its business in the ordinary way, although its debts may greatly exceed its assets. (*Post, pp.* 445-452.)

Cases cited and approved: First Nat. Bank v. North Alabama L. & M. Co., 91 Tenn., 12; Bank v. Lbr. & Mfg. Co., 91 Tenn., 12; Mosely v. Williamson, 52 Tenn., 278; Comfort v. McTeer, 75 Tenn., 660; Voightman v. Southern Railway Co., 123 Tenn., 452; Tradesman Publishing Co. v. Knoxville Car Wheel Co., 95 Tenn., 634.

Cases cited and distinguished: Fogg v. Blair, 133 U. S., 534; Hollins v. Brierfield & Co., 150 U. S., 384; Chattanooga, Rome & Columbus R. R. Co. v. Evans, 66 Fed., 809.

10. **ACKNOWLEDGMENT.** Where acknowledgment is taken in another state by notary, certificate of authority not required.

Acknowledgment of a deed and mortgage taken by a notary public in another State was sufficient, though no certificate of the officer's authority was attached to it, under Acts 1919, chapter 48. (*Post, pp.* 452-455.)

Cases cited and approved: First Nat. Bank of Fulton, Ky., v. Howard et. al., 253 S. W., 961.

FROM WASHINGTON.

---

Hicks v. Whiting.

---

Appeal from the Chancery Court of Washington County.—HON. HAL H. HAYNES, Chancellor.

SELLS, SIMMONDS & BOWMAN, for W. D. Hicks et al.

MILLER & DEPEW, CHAS. T. CATES, JR., J. A. SUSONG, PIPER, CAREY & HALL and JOHN S. SHORT, for Wm. S. Whiting and others.

MR. JUSTICE HALL delivered the opinion of the Court.

The Elizabethton Flooring Company was a manufacturing corporation engaged in the manufacture of flooring with its principal plant located at Elizabethton, Tenn., and it operated another plant at Johnson City, Tenn., the title to which stood in the name of Wm. S. Whiting. It had been, for several years prior to 1920, in successful operation, and had acquired valuable property. Wm. S. Whiting was its president and owned its outstanding stock. It had purchased heavily and incurred large obligations for raw materials during the period of high lumber prices, and was greatly affected by the industrial depression, which began in the summer and fall of 1920. During that period there was a heavy decline in all lumber products, and particularly in those manufactured by the flooring company. This was true to such an extent that in the fall of 1920 its financial obligations were pressing and grew from bad to worse until April, 1921, when the liabilities of said company largely exceeded its assets, and it was apparent that, unless it could secure additional working capital and extensions of its obligations, the assets of said company would have to be liquidated and

distributed among its creditors. It is uncontroverted that, if the flooring company had been compelled to cease operations, and its plant and properties had been sold at a receiver's sale at that time, its creditors would not have received more than twenty cents on the dollar of their claims.

Wm. S. Whiting, president of said company, being desirous that all of its creditors should be paid in full, determined upon an effort to secure the co-operation of the company's creditors, and a reorganization of its affairs to this end. In his willingness to save the creditors of the flooring company from loss he agreed to take upon himself the entire unsecured debt of the company, and to execute his promissory notes therefor to its creditors, secured by preferred stock, as is fully set out in the readjustment plan and agreement filed as Exhibit A to the answer of defendants in this cause.

Mr. Whiting consulted with some of the largest creditors of the flooring company, and procured a notice to be sent out by such creditors to all persons to whom the flooring company was indebted, asking them to meet at Johnson City on May 2, 1921, with the officers of the flooring company, and certain committees of the largest creditors of the Flooring Company, for the purpose of discussing a plan of readjustment of its debts and capitalization.

Complainants, or their attorney in this cause, received these notices and attended the meeting. There were some two hundred people attended that meeting, and most of them were creditors. It appears that at this meeting nothing concerning the assets and liabilities of the flooring company, or its financial condition, was concealed

from its creditors. On the contrary, there was the fullest discussion of same. Not only this, but the entire plan of reorganization of the company, and its consolidation with certain other companies in which Mr. Whiting was interested, was fully discussed and published in the Johnson City Staff of May 3, 1921, of which copies were sent to all creditors of the flooring company.

At this meeting of May 2, a merchandise creditors committee and a bankers' creditors' committee was organized, who undertook the task of securing the assent of creditors not then agreeing to the plan. The merchandise creditors' committee was composed of J. A. Summers, of Johnson City, president of the Summers Hardware Company, C. L. Marshall, president of Marshall Bros. Lumber Company, and J. Walter Wright, of the J. Walter Wright Lumber Company, of Bristol, Tenn.

The bankers' committee was composed of S. V. Carter cashier of the East Tennessee National Bank of Knoxville; L. H. Shumate, president of the Unaka and City National Bank of Johnson City; E. C. Alexander, of the First National Bank of Elizabethton; J. A. Susong, president of the First National Bank of Newport; Sam T. Millard, of the Union Trust Bank of Bristol; W. B. Williamson, banker, of Asheville, N. C., and Thomas B. Byrd, banker, of Burnsville, N. C.,

Prior to the meeting of May 2, suits upon alleged breaches of contract for the purchase of logs had been brought against the flooring company, the principal and active litigants in which were the original plaintiffs in the present suit, W. D. Hicks, Duncan, and Hite; also a suit by complainant Lamberth, and another by the Southern

Lumber Company, a partnership composed of Grizzle and Fletcher. All these plaintiffs were represented by the firm of Sells & Simmonds, attorneys.

It is affirmatively shown that Mr. Hicks was present at the meeting of May 2. Whether the other complainants were present in person does not appear, but it does appear that Mr. Sells, their attorney, and then acting for them, was present and represented their interests and participated in the discussion of said plan.

Copies of the readjustment plan and proposed consolidation were furnished to complainants, and it is not controverted that they were familiar with all of its details, although neither they nor their attorney assented to same on said date.

Section 7 of the plan and agreement expressly conferred upon the committees the power to make such modification and changes as might become necessary, and in the manner therein set out, and said committees were given the broadest authority to do and perform all things they might deem necessary or expedient in carrying out or promoting the purposes of the plan as then existing, or as it might be modified and amended.

At said meeting the rights of claimants who had brought lawsuits against the flooring company, whose debts were in dispute, were fully discussed, and, upon motion of Judge Thad A. Cox, it was provided that there should be set apart to protect any possible recovery in such suits a certain portion of the notes of Mr. Whiting and preferred stock securities.

As before stated, complainants did not assent and sign the readjustment plan of May 2, but on the day following

the meeting, through their counsel, Sells & Simmonds, sought to amend their bill, which had been filed in Hicks suit No. 1, so as to have the same sustained as a general creditors' bill, and to ask for a receiver and injunction. If sustained, this would have destroyed the readjustment plan, would have caused the flooring company to cease operations, and brought about a sale of its properties, which it is indisputably shown could not, in the then depressed prices of timber lands, lumber and lumber products, have realized more than twenty cents on the dollar for the creditors of said company.

To prevent this serious loss to the creditors, including complainants, negotiations were had which, on May 6, 1921, resulted in the following agreement:

"This agreement made and entered into on this the 6th day of May, 1921, by and between W. D. Hicks, E. E. Duncan and S. F. Hite, parties of the first part, C. L. Fletcher and J. D. Grizzle, parties of the second part, W. E. Lamberth, party of the third part, and Elizabethton Flooring Company, William S. Whiting Company and William S. Whiting, parties of the fourth part, witnesseth:

"Whereas, the parties of the first, second and third part, have suits pending in the chancery court at Johnson City, Tennessee, the parties of the first part having filed a general creditors' bill, against the parties of the fourth part, and all of the parties complainant in said suits have given notice to the defendants therein, the parties of the fourth part, that they would seek a consolidation of said suits, and move that the same be sustained as a general creditors' bill and that a receiver be appointed to take over the property of the defendants; and

"Whereas, the parties herein have reached an agreement whereby the parties complainant have agreed to a dissolution of the injunction heretofore granted in said creditors' suit, and have agreed not to prosecute said suit as a creditors' suit for the benefit of the general creditors of the parties of the fourth part; and

"Whereas, a compromise arrangement is now being negotiated between the parties of the fourth part, and their creditors, whereby the creditors are to surrender their claims against the parties of the fourth part, taking notes of William S. Whiting secured by preferred stock of Elizabethton Flooring Company, but it is not contemplated that the parties of the first, second and third part, should surrender their claims or waive any of their rights against any of the parties of the fourth part, and that any recoveries that may be granted to the parties of the first, second and third part, or any of them, shall be rendered against the parties of the fourth part jointly, it being agreed that the liability of the said parties, if any, is a joint liability; and

"Whereas, the parties of the fourth part, or some of them, contemplate a consolidation of their interests with other corporations, in a manner hereafter to be arranged, the recoveries of the parties of the first, second and third part, if any, to be assumed by such consolidated concern, company or corporation; therefore:

"In consideration of the premises and the sum of five ($5) dollars, cash in hand paid by the parties of the fourth part to the other parties to this agreement, the receipt of which is hereby acknowledged, and other valuable considerations, it is mutually agreed by all of the parties hereto:

"I. That the parties of the first, second and third part will not prosecute said general creditors' proceeding as a suit for the benefit of all creditors of the parties of the fourth part, but that the same will be prosecuted solely for the benefit of the parties complainant in each of said respective suits, the same to be prosecuted severally. But it is understood that said creditors' suit shall remain upon the docket and, should other creditors of the parties of the fourth part attempt similar proceedings, then the parties complainant shall have the right to renew their motion for a receiver and to have said suit sustained as a general creditors' bill.

"II. Elizabethton Flooring Company has entered its appearance as a party defendant to all of said suits, and all of the parties hereto agree that the obligations sued upon in said several suits herein referred to are joint obligations of the parties of the fourth part, if obligations of any of said parties, and a decree or decrees may be entered in said suits against all of the parties of the fourth part, if the court should determine that any of the parties of the fourth part are liable to the parties of the first, second and third part, or any of them, in any or all of the suits referred to.

"III. The parties of the fourth part agree to pursue diligently the plan and agreement of readjustment of debt and capitalization of Elizabethton Flooring Company as set forth in printed proposal dated May 2, 1921, furnished to creditors of said company. It is fully understood that the parties of the first, second and third part are not to come in under said plan, or adopt the same, unless they should elect to do so, and that they shall surrender none

of their rights as provided for therein. The parties of the first, second and third part shall not be bound by any election to take under said plan unless the same is in writing, and approved by their counsel.

"IV. Should the plan referred to above be adopted, it is understood that the parties of the fourth part are then to seek a consolidation of Elizabethton Flooring Company with the Cherokee Timber Company and Boone Fork Lumber Company. Should said consolidation take place then and thereafter the parties of the first, second or third part, or any of them, may elect to take said securities in the same manner as provided in the printed plan hereinbefore referred to, such election to be evidenced by writing as hereinbefore provided. But nothing herein contained shall bind any of the parties of the first, second or third part, to take said securities unless they shall so elect as hereinbefore provided. They shall have the right to proceed to collect their judgments, if such are obtained, in such manner as they may adopt.

"In witness whereof, the parties have hereunto affixed their signatures, the day and year first hereinabove written. [Signed] W. D. Hicks, E. E. Duncan and S. F. Hite, Parties of the First Part. C. L. Fletcher and J. D. Grizzle, Parties of the Second Part. W. E. Lamberth, Party of the Third Part, by Sells & Simmonds, Solicitors. Wm. S. Whiting, Wm. S. Whiting Co., by Wm. S. Whiting, President. Elizabethton Flooring Company, by Wm. S. Whiting, President, Parties of the Fourth Part."

Pursuant to this agreement, on May 16, 1921, an order was entered in each of the causes, *W. D. Hicks et al.* v. *William S. Whitin, No. 1, Lamberth v. Whiting et al.,* and

*Southern Lumber Company* v. *Whiting et al..* These orders are identical with one exception. That entered in the Hicks suit No. 1 is as follows:

"*W. D. Hicks et al.* v. *Wm. S. Whiting et al.*
"In Chancery at Johnson City.
"Agreed Order.

"In this cause comes the defendant Wm. S. Whiting, William S. Whiting Company and Elizabethton Flooring Company and agree that the obligations sued upon herein, if obligations, are joint and several, and that in the event the complainants, or any of them, are granted a decree or decrees that the same may be entered against each and all of said defendants. And such recovery, if any, shall become an obligation of any successor or successors of any of said defendants, and decree may be entered against any successor to any or all of said defendants.

"And by consent the cause is made a vacation case, with the agreement that the parties shall have until August 1st, 1921, in which to take and file their proof, after which the case will be sumbitted to the chancellor in vacation for a final decree.

"And, by consent of the parties, the injunction heretofore granted in the cause is dissolved without terms, the defendants agreeing to waive any question as to damages by reason of the suing out of the injunction or filing of the amended and supplemental bill."

Pursuant to this agreement, the creditors' committees actively endeavored to obtain the assent of the creditors of the flooring company to the readjustment plan, and on the faith of said agreement secured the assent of creditors representing more than ninety-two per cent. of the indebtedness of the flooring company.

The consolidation plan, which, under the agreement of May 6, supra, the defendants were bound to pursue, provided for a first mortgage on all properties of the Cherokee Timber Company, Boone Fork Lumber Company, and the flooring company, securing an authorized issue of $1,500,000 first mortgage, fifteen-year, sinking fund, gold bonds. Of these $850,000 were to be presently issued and sold to Hambleton & Co., bankers, of Baltimore, Md. Preferred stock not to exceed $2,000,000 was authorized, and an issue of common stock, without par value, not to exceed 100,000 shares.

This plan of consolidation, the execution of the mortgage, the sale of the bonds, the issuance of the preferred and common stock, were approved, and adopted by the creditors' committees, after notice to all creditors in strict compliance with the provisions of section 7 of the readjustment plan.

During all these negotiations the flooring company, though embarrassed and indebted to insolvency, continued operations. Its mill was running, it was manufacturing and selling its products, and was buying and selling lumber, and in all respects proceeding with its ordinary business so far as the conditions of the market would permit, and to which business the Boone Fork Manufacturing Company thereafter succeeded.

The Boone Fork Manufacturing Company was formerly the Cherokee Timber Company, its charter being amended so as to change its name to the Boone Fork Manufacturing Company, and its capital stock was increased to enable it to take over the properties of the flooring company and the Boone Fork Lumber Company.

The value of the combined properties of the Cherokee Timber Company and the Boone Fork Lumber Company was greatly in excess of that of the flooring company. It is uncontroverted that the reasonable valuation of the flooring company's assets, in the then condition of the market, was not in excess of $350,000, while the assets of the Boone Fork Lumber Company and the Cherokee Timber Company aggregated more than $4,000,000.

On September 26, 1921, the flooring company, pursuant to a resolution of its board of directors, and a resolution passed by the unanimous consent of its common stockholders, submitted the following proposition to the Boone Fork Manufacturing Company:

"Elizabethton, Tenn.          September 26, 1921.

"Boone Fork Manufacturing Company, Colonial Trust Building, Philadelphia—Dear Sirs: We hereby offer to sell, convey and transfer to your company the whole of the property and franchises of this company, for $582,698.27, payable as follows:

"In cash .............................. $ 72,698.27

In eight per cent. notes of William S. Whit-

ing ................................. $510,000.00

"The above mentioned notes to be dated September 1, 1921, and payable six months after date, with the privilege to said Whiting of five renewals of six months each, and to be secured by a par amount of the preferred stock of your company equal to the amount of said notes.

"The property and franchises of this company are to be sold, conveyed and transferred to your company, free and clear of all liens and incumbrances, and free and clear of all debts and liabilities, with the following exceptions:

"1. Federal income taxes due or to become due.

"2. State, county and municipal taxes for 1921.

"3. Indebtedness to banks secured by warehouse receipts, which indebtedness amounted as of August 31, 1921, to $105,243.12.

"4. Amounts due creditors holding retained titles to machinery aggregating approximately $15,500.

"The payment of the above-mentioned federal income taxes, State, county and municipal taxes, indebtedness secured by warehouse receipts and amounts due creditors holding retained titles is to be assumed by your company. We will obtain for you a deed to the Johnson City property which stands in the name of William S. Whiting. The Johnson City property is subject to a mortgage debt of $73,021.44, which debt your company is to assume, but it will be conveyed free and clear of all other liens and incumbrances, except the lien for State, county and municipal taxes for 1921, which are to be paid by your company.

"The property to be sold, conveyed and transferred to your company will include all of the property of this company, of every kind and description, including bills and accounts receivable, excepting only moneys in hand or on deposit.

"Very truly yours

"ELIZABETHTON FLOORING COMPANY,

By C. H. MATHES, Secretary."

This offer was, by proper corporate action, accepted by the Boone Fork Manufacturing Company.

The consideration mentioned in the offer was actually paid, the cash was paid to and distributed by the flooring

company to its creditors in accordance with the directions of the creditors' committees. The cash paid was applied in satisfaction of about $60,000 overdrafts due to a number of banks, and the residue due to the satisfaction of claims under $200.

Mr. Whiting executed his notes, secured by an equal par amount of Boone Fork Manufacturing Company's preferred stock of $463,000, to the flooring company, which amount was by that company distributed to its creditors in satisfaction of their claims. An additional $50,000 of Mr. Whiting's notes, and a like amount of the preferred stock of the Boone Fork Manufacturing Company as collateral thereto were delivered to the flooring company, and are now held by the receivers in this cause for the protection of creditors whose claims had not been liquidated at the time of the transfer.

The Boone Fork Manufacturing Company assumed, and has paid as required, the various items assumed by it in the offer, and has carried out fully the obligations imposed upon it.

The deeds transferring the real estate, plant, and the machinery of the flooring company and the deed of Whiting transferring the Johnson City property were executed on September 26, 1921, and were recorded on October 11, 1921.

Thereupon the mortgage authorized by the creditors' committees of the flooring company, and which was contemplated in the consolidation plan, was executed by the Boone Fork Manufacturing Company to the Commerce Trust Company, which mortgage was recorded in Carter and Washington counties, and $850,000 of the bonds au-

thorized were issued and sold to Hambleton & Co., of Baltimore, Md.

It appears that during all these negotiations, conveyances, and transfers from May 6, 1921, to November 5, 1921, no objection was made to the consummation of said plan and the transfer of the properties of the flooring company, nor was any objection made to the receipt and distribution by the flooring company of the consideration mentioned in the offer of sale.

On August 30, 1921, the chancellor handed down a decree in the original suit of Hicks, Duncan, and Hite, which is designated here as suit No. 1 to distinguish it from the present suit. This decree established the right of said complainants to recover for the breach of contract alleged in their bill, but no amount was fixed, nor was any money judgment rendered. A reference was ordered to the master to report the amount of damages to which complainants were entitled. From this decree an appeal was taken by defendants to this court.

Similar decrees were later rendered in the Lamberth & Southern Lumber Company suits, and references were ordered. From these decrees no appeals were taken.

On November 5, 1921, complainants, Hicks et al., and Lamberth and Southern Lumber Company, presented their bill in this cause as a petition to the chancellor, and sought to have it filed in the cause of Hicks No. 1, then pending in the supreme court.

The chancellor denied it as a petition, but granted leave to complainants to file it as an original bill in behalf of complainant Hicks, for himself and for the use of Duncan and Hite, but it was not then allowed to be filed in behalf

of complainants Lamberth and Southern Lumber Company, both of whom came in later by petition.

This bill alleged certain of the proceedings in Hicks suit No. 1, the execution of the agreement of May 6, 1921, and the order of May 16, 1921. It alleged the recovery of the decree in the said Hicks suit No. 1 on August 30, 1921, the reference to the master, and alleged that complainants were granted a recovery for approximately $3,000 and interest. It alleged that a certified copy of said decree was recorded in Carter county on September 10, 1921. It described the real estate transferred by the flooring company and Whiting, and alleged that the recording of the decree constituted a lien upon the real estate of the Flooring Company in Carter county.

It alleged the consolidation of the flooring company with the Cherokee Timber Company and the Boone Fork Lumber Company, and the conveyances of the properties of the flooring company to the Boone Fork Manufacturing Company. It alleged the execution of the deeds and the execution and registration of the mortgage to the Commerce Trust Company.

It alleged the issuance and purchase by Hambleton & Co., of the $850,000 first mortgage bonds, but alleged that Hambleton & Co. had only paid about $200,000 thereon. It alleged that both Hambleton & Co. and the Commerce Trust Company were foreign corporations, which had not qualified to do business in this State.

It further alleged that defendants were indebted to Lamberth in the sum of about $7,500, and to the Southern Lumber Company in the sum of about $2,000; that both had suits pending in said chancery court to recover these

Hicks v. Whiting.

amounts; and that both Hambleton & Co. and Commerce Trust Company had actual notice of the agreement of May 6; and that complainants did not agree to come in under the reorganization plan, but advised defendants they would not do so.

The bill then alleges that complainants have the right to file it, and when final decree is entered in Hicks suit No. 1 to have the same entered against Boone Fork Manufacturing Company and declared a lien on the Tennessee properties of said defendant, free from the mortgage executed to the Commerce Trust Company, as trustee, and that defendant Boone Fork Manufacturing Company be enjoined from receiving any further sum upon the mortgage or further incumbering or disposing of said properties. The bill then proceeds:

"Petitioner is further advised that, should he be mistaken in his remedy, and that he is not entitled to a decree against Boone Fork Manufacturing Company for any recovery that may be awarded him, then he has the right to come into this court and have set aside as fraudulent the conveyance aforesaid made by defendants Whiting and Elizabethton Flooring Company; also to have the alleged mortgage set aside as fraudulent and a cloud upon the title to said properties, and have the same as such removed, and have said properties subjected to the payment of any recovery that may be awarded him herein."

The bill further alleged that the flooring company had conveyed all of its assets to the Boone Fork Manufacturing Company, and was without property; that at the time of said conveyance it was insolvent; that Whiting had conveyed all of his property in Tennessee, and that the Whit-

ing Company had no assets. It was alleged, therefore that said conveyances were fraudulent and void as to complainants and the creditors of said flooring company and Whiting.

The bill further alleged that complainants and others stood by and permitted the reorganization because of the fact that the new company was to assume and pay any recoveries awarded; that such recoveries were to be entered against defendants and the new company; and that defendants are estopped to deny that such recoveries should be awarded against Boone Fork Manufacturing Company, and said acts and conduct are relied upon as an estoppel upon defendants from denying that said company assumed said debts and agreed that recoveries might be decreed against it.

It was further alleged that, by the agreement of May 6, the property of Whiting and the flooring company became charged with an express trust for the payment of complainants' debts in the event said consolidation should be perfected; that said properties are held in trust for the benefit of said creditors by the Boone Fork Manufacturing Company; that it took the properties charged with the debts of complainants, having actual knowledge at the time of transfer that complainants had brought suit upon their claims and had been awarded decrees.

It was further alleged that to permit the Boone Fork Manufacturing Company to hold the properties free from complainants' claims would be a fraud; that complainants are advised that said manufacturing company will deny such liability; that the properties were conveyed by defendants for the purpose of defrauding complainants and

other parties to said agreement; that the Boone Fork Manufacturing Company knew of and actively participated in said fraudulent acts; that the same was true as to Hambleton & Co. and the Commerce Trust Company, trustee, and that said mortgage is void as to complainants by reason of said fraudulent acts.

The bill prayed:

For decrees against the Boone Fork Manufacturing Company, and that such decrees be declared a lien upon the properties conveyed by Whiting and the Flooring Company, free from the lien of the mortgage to the Commerce Trust Company, trustee. That said bill be sustained as a general creditor's bill.

That in the event complainants are not entitled to a decree against the Boone Fork Manufacturing Company for the amount of any recoveries which may be awarded them under the contract of May 6, and order of May 16, then the deeds from Whiting and the Flooring Company to the Boone Fork Manufacturing Company be decreed fraudulent and void, and that the same be set aside. That the mortgage to the Commerce Trust Company, as trustee, be set aside, and the property subjected to the payment of any decrees rendered in favor of complainants. Writs of attachment and injunction were prayed for.

Upon the presentation of this so-called petition, the chancellor allowed same to be filed as an original bill, as before stated, and directed by *fiat* that a writ of injunction issue unless as much as $30,000 of the proceeds of said bonds were retained subject to the order of the court to satisfy any which complainants might be awarded. A writ of attachment was also issued and served upon the defendant Boone Fork Manufacturing Company on No-

vember 23 and 25, 1921, respectively.

By an amendment filed to the bill on December 3, 1921, complainants sought to have it sustained as a general creditors' bill, and the same was sustained as such on April 22, 1922.

On June 29, 1922, complainants amended their bill so as to allege that the deeds and mortgage to the Boone Fork Manufacturing Company and the Commerce Trust Company, respectively, were never properly acknowledged and recorded, were not entitled to be admitted in evidence, and were of no binding force or effect against complainants and the other creditors of the Flooring Company and Whiting.

Subsequently complainants were permitted to further amend their bill so as to allege the provisions of the readjustment plan with reference to the issuance of bonds of the Flooring Company in the sum of from $100,000 to $150,000, and to allege that the execution of the mortgage securing $850,000 was a violation of the agreement of May 6, and was fraudulent and void.

Defendants demurred to the bill on the following grounds:

(1) In so far as it alleged that the decree of August 31, 1921, in *Hicks suit No. 1 v. Whiting et al.,* created a lien on the property of defendant, because said decree merely declared the rights of complainants and referred the cause to the master and awarded no recovery.

(2) To such parts of the bill as seek to set aside the conveyances to Boone Fork Manufacturing Company and the deed of trust of said company to the Commerce Trust Company, because the agreement of May 6, exhibited with

the bill, shows that complainants agreed to the transfer, and in consideration thereof defendants agreed that the judgment rendered in said cause should be the joint and several obligations of the defendants named in the bill, and should be assumed by the successor of the corporate defendant; that upon the faith of said agreement said transfers had been made, and complainants were estopped by said contract and their acts thereunder from asking that said conveyances be set aside; that no obligation had been created by the decree of the court which the successor corporation could assume, nor had any decree been rendered which could be entered against it; that complainants could not relieve themselves of the estoppel of the contract of May 6 by saying that the successor to the flooring company will refuse to carry into effect the said agreement; and that these allegations of the bill were premature because no decree had been rendered.

(3) The remaining grounds of said demurrer averred that complainants were estopped by reason of the facts appearing upon the face of the bill and exhibits; that, if complainants ever had a lien upon the property of the flooring company, they released it by the agreement of May 6, and because complainants themselves were breaching the contract of May 6 by bringing this suit.

The sufficiency of pleas in abatement filed by the Commerce Trust Company and by Hambleton & Co. was passed upon by the chancellor. That of the Commerce Trust Company was overruled, and that of Hambleton & Co. was sustained. The demurrers of defendants were overruled, with leave granted to them to rely upon the grounds thereof in their answers and at the hearing.

Thereupon defendants Wm. S. Whiting, Wm. S. Whiting Company, the flooring company, and the Boone Fork Manufacturing Company answered the bill. In their answer the history of the transfer of the flooring company's properties to the Boone Fork Manufacturing Company was given, and the reasons therefor. The conference with and knowledge and assent of the flooring company's creditors, including complainants, were averred, and all charges of fraud were answered and denied.

The answer set up, by way of estoppel upon complainants, that, upon the faith of the agreement of May 6, defendants had procured the execution of the plan proposed.; that between ninety-two and ninety-three per cent. of the creditors of the flooring company had been settled with by Wm. S. Whiting's notes secured with the preferred stock of the Boone Fork Manufacturing Company; that creditors holding about $372,000 of debts against the flooring company, relying upon complainants' agreement and conduct, had surrendered their evidences of debt against the flooring company, and had taken said notes and preferred stock in satisfaction of their indebtedness; and that complainants were estopped to disturb said plan and agreement which had been entered into upon the faith of the agreement of May 6.

It was further pleaded as estoppel that the Boone Fork Manufacturing Company, relying upon the agreement of May 6, and the conduct of complainants, had taken over the properties of the flooring company, and that the rights of other parties, who could not be affected by complainants' claims, had become involved.

The amendments to the bill were answered, and the allegations therein met and denied.

The Commerce Trust Company answered, adopting in its answer the defenses set up in the answer of its codefendants, and in addition met and denied the allegations of the bill as to its domestication.

In its answer it set up additional matters, by way of estoppel, upon complainants, and averred that by their acts and conduct set forth in the answer of its codefendants complainants had induced the Boone Fork Manufacturing Company to take over the properties of the flooring company, and to execute the deed of trust to the Commerce Trust Company, and had induced Hambleton & Co. and others to purchase said bonds, and had involved innocent purchasers who had been misled to their hurt if said mortgage could then be set aside, and that the silence of complainants and their acquiescence during the negotiations leading up to and consummated in the execution of said mortgage estopped complainants from any attack thereon.

On April 17, 1922, notice was served on defendants that complainants would seek leave to file an amended and supplemental bill, seeking the issuance of writs of attachment against all of the Tennessee properties of defendants, and would ask that said bill be sustained as a general creditors' bill against defendants Whiting, the Flooring Company, and Boone Fork Manufacturing Company.

In this amended and supplemental bill, after referring to the former proceedings, it was alleged that Hambleton & Company held the common stock of the Boone Fork Manufacturing Company under a voting trust, and was in con-

trol of its affairs; that none of the income from its operations was being applied to the payment of its debts; that its Elizabethton plant, which had been taken over from the flooring company, was incurring large debts, and it was alleged that the Boone Fork Manufacturing Company was insolvent, or bordering thereon, and that certain of its creditors were seeking to effect an arrangement by which they would receive preference of their debts; that they were informed that a second mortgage of approximately $400,000 was in contemplation, and that these matters would amount to a fraud on the rights of complainants and defeat them in the collection of their debts; and that said Boone Fork Manufacturing Company was conspiring with certain of its creditors to prefer them and defeat complainants and other creditors.

It was alleged that complainants have the right to pursue the Whiting and flooring company properties into the hands of the Boone Manufacturing Company and the Commerce Trust Company, and to have all of said transfers set aside as fraudulent, and it was alleged that defendants were fraudulently disposing of their assets; and said bill asked for an injunction and the appointment of a receiver.

Pending the notice of the presentation of this bill, certain creditors of the Boone Fork Manufacturing Company filed in the United States district court at Greeneville a general creditors' bill, alleging that it held assets far in excess of its debts, but was unable to meet its current liabilities because of depressed business conditions, and receivers were appointed by said court for said company on April 21, 1922.

On April 22, 1922, pursuant to complainants' notice, the amended and supplemental bill was allowed to be filed,

Hicks v. Whiting.

writs of attachment and injunction were granted, and it was sustained as a general creditors' bill, and the receivers in this cause were appointed by the chancellor for the flooring company.

Thereafter, such proceedings were had and orders made in the district court of the United States at Greeneville, and by the chancellor in this cause, as to give to the State receivers possession of the Tennessee assets of the Boone Fork Manufacturing Company, which had been transferred to it by the Flooring Company and Wm. S. Whiting, and which remained undisposed of in its possession, in so far as might be necessary for the satisfaction of the indebtedness adjudged in the present action, and the federal receivers were held entitled to the equity in said property, after satisfying any sum which might be adjudged a superior claim upon said property; and the property has since been so held.

Petitions were filed by certain other creditors of the flooring company and Wm. S. Whiting in this cause. With certain variations they present the same issues as the pleadings herein; the variations being included in three classes:

(a) Complainants Hicks, Hite, and Duncan, Southern Lumber Company, and Lamberth, parties to the agreement of May 6, 1921.

(b) Petitioners who have suits pending for damages for breach of contract substantially as class (a), but who did not execute the agreement of May 6, 1921, nor sign the written assent to the readjustment plan and agreement, nor release their claims, to-wit, the Dobbins Lumber Company and Phillips & Harrell.

(c) Petitioners who signed the written assent to the readjustment plan and agreement and release of their claims, to-wit, petitioners Hyder and Grindstaff.

The variations in defenses are that, as to class (b), estoppel is predicated upon their knowledge of the proposed transfer of the flooring company and Whiting properties; their attendance at and participation in the meeting of May 2, and their silence and acquiescence while said transfers were being negotiated and made.

As to class (c), their written assent to said plan and release of their claims, and their active participation therein, are relied upon as an estoppel.

The cause was heard by the chancellor on July 25, 1922, and he decreed:

(1) That the conveyance executed by the flooring company and Wm. S. Whiting to the Boone Fork Manufacturing Company was made with the intent to hinder and delay complainants, and all nonassenting creditors of the flooring company, in the collection of their debts, as was also the mortgage of the Boone Fork Manufacturing Company to the Commerce Trust Company, trustee; that Hambleton & Co. knew of said fraudulent purpose, and participated therein; and that said conveyances and mortgage were fraudulent and void as against complainants and other nonassenting creditors of said Flooring Company, and that L. H. Shumate et al., the creditors' committees, ratified and confirmed the fraud, and for that reason they and the creditors represented by them were precluded from sharing in the assets of said Flooring Company and Wm. S. Whiting.

(2) Said real estate was ordered to be sold and the personalty disposed of for the satisfaction of complain-

ants' recoveries, as well as the recoveries of all other creditors who may be adjudged entitled to share therein, and that all other creditors of the defendant flooring company, not including those represented by said committees, might share in the distribution.

· (3) An injunction was granted against the Boone Fork Manufacturing Company, Hambleton & Co., and the unknown bondholders, prohibiting the further incumbrance of the property, or the payment of any moneys upon the mortgage held by the Commerce Trust Company, as trustee, and a reference was ordered.

(4) That the flooring company had committed an overt act of insolvency on May 2, 1921, by placing its affairs in the hands of the creditors' committees, and its assets became impressed with the trust for the payment of the debts of complainants and all other nonassenting creditors, and that the filing of the bill as amended in the cause fixed a further lien on said assets under the statute.

(5) That complainants had complied, or in good faith held themselves ready to comply, with the contract of May 6, 1921, until defendants breached the same by executing the mortgage to the Commerce Trust Company, and by evading and refusing to assume and agree to pay the recoveries of complainants; that defendants further breached said contract by attempting to convey the properties of the flooring company to the Boone Fork Manufacturing Company, and setting apart the Whiting notes, amounting to $50,000, for the nonassenting creditors, instead of consolidating said company with the Cherokee Timber Company and the Boone Fork Lumber Company, as provided in said contract, and setting apart enough of said notes and stock

to cover the debts of complainants and holding same subject to their option.

(6) Defendants' pleas of estoppel were overruled, and complainants and all nonassenting creditors of the flooring company were awarded recoveries against Hambleton & Co. and the Boone Fork Manufacturing Company for any portion of their debts remaining unsatisfied after the exhaustion of the assets impounded herein, such liability not to exceed the value of the flooring company's assets transferred to the Boone Fork Manufacturing Company.

(7) All properties attached and described in the pleadings of the flooring company, Wm. S. Whiting, and the Wm. S. Whiting Company were adjudged jointly liable with the flooring company for all of its indebtedness.

(8) That the mortgage from the Boone Fork Manufacturing Company to the Commerce Trust Company, trustee, was legally executed and acknowledged, and was properly registered in this State.

On motion of Hambleton & Co., the personal decree against them was vacated and set aside, but the injunction was left in force.

From this decree defendants Wm. S. Whiting, Wm. S. Whiting Company, the flooring company, Boone Fork Manufacturing Company, and Commerce Trust Company prayed an appeal to this court, which the chancellor granted in his discretion.

Complainants appealed from so much of the chancellor's decree as adjudged from the mortgage executed to the Commerce Trust Company by the Boone Fork Manufacturing Company was properly and legally acknowledged, and was entitled to registration in this State, and from so much

of said decree as sustained the plea in abatement of Hambleton. & Co., and denied a personal decree against them for the indebtedness due complainants from the flooring company, Wm. S. Whiting, and the Wm. S. Whiting Company; and errors have been assigned by the respective appellants.

It is insisted by defendants that the chancellor erred in holding that the conveyances from the flooring company and Wm. S. Whiting to the Boone Fork Manufacturing Company, and the mortgage from the Boone Fork Manufacturing Company to the Commerce Trust Company, were fraudulent, and made with the intent to hinder and delay complainants and other nonassenting creditors in the collection of their debts; and in setting the same aside.

It is insisted by defendants that there is no evidence whatsoever in the record tending to show fraud upon the part of the defendants in the execution of said conveyances, nor any intent to hinder and delay creditors in the collection of their debts. On the contrary, it is insisted that the entire evidence shows that every intent and effort upon the part of defendants were directed toward the payment of debts and the satisfaction of all creditors of the flooring company and that there is no fact or evidence in the record upon which the chancellor's decree can be supported.

The chancellor, in his written opinion, construed the contract of May 6, 1921. He found that a consolidation of the flooring company, the Cherokee Timber Company, and Boone Fork Lumber Company was contemplated, and the stock of the consolidated concern was to be substituted for the flooring company stock. He also found that com-

plainants' recoveries, if any, were to be assumed by the Boone Fork Manufacturing Company. He further found that defendants were obligated by the contract of May 6 to pursue diligently the readjustment plan as set forth and discussed at the meeting of May 2, 1921, and that an agreed order was entered on May 16, 1921, dissolving the injunction and agreeing that recoveries could be secured against any successor of defendants.

He further found that the assenting creditors, co-operating with their codefendants, through the committees hereinbefore referred to, brought about the reorganization and consolidation and the conveyances to the Boone Fork Manufacturing Company by the flooring company in harmony with the agreement of May 6, and the order of the court based thereon, except it did not happen after the rehabilatation of the flooring company, and that this was a vital departure from the plan of May 2, 1921.

It is insisted by defendants that this finding of the chancellor was erroneous for the following reasons:

(1) That the alleged departure from the plan was not a departure, but was an authorized alteration or change of the plan.

(2) That there never was any refusal on the part of the Boone Fork Manufacturing Company to assume liability for any recovery by complainants.

The agreement of May 6, 1921, section IV, does not provide that the consolidation shall not be sought until after the stated plan was carried out. The consolidation was the ultimate and final plan. The recognition that such stated plan might require changes and alterations was manifestly the reason for the discretion vested in the com-

mittees by section VII of the plan. This section gave the committees full authority to change or amend the plan of May 2.

We are of the opinion that the evidence wholly fails to show that the Boone Fork Manufacturing Company breached the provisions of the agreement of May 6, 1921, or the agreed order of May 16, 1921, providing that it should assume as its own obligations any recoveries by complainants against the parties of the fourth part to said agreement. In fact, it could not have done so at the time the chancellor held the breach occurred, because it appears that at that time no money recoveries had been adjudged in favor of the complainants.

But if the Boone Fork Manufacturing Company had definitely said it would not assume complainants' recoveries, their remedy was not rescission, but the right of suit against the Boone Fork Manufacturing Company. In fact, complainants' bill of November 5 shows that this was primarily the relief sought by them.

We are of the opinion that the finding of fraud by the chancellor on the part of defendants in the execution of said conveyances is not supported by the facts. On the contrary, it is shown that all that was done in bringing about the consolidation of said companies and consummating said conveyances was open and aboveboard, and was manifestly in the interest of creditors who would not have received more than twenty cents on the dollar of their claims if the flooring company had been wound up as an insolvent.

The burden of proof was on complainants to establish fraud. This they have not done. By section 7 of chapter 125 of the Acts of 1919 (Uniform Fraudulent Convey-

ance Act), the conveyances in question, to be fraudulent, must be:

(a) Without a fair consideration, leaving the grantor insolvent; or

(b) Made with actual intent to hinder, delay or defraud creditors.

Section 3 of said act provides:

"Fair consideration is given for property, or obligation—

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, . . ."

The burden is upon complainants to establish the fact of intentional fraud or insufficient consideration. *Gaugh* v. *Henderson*, 2 Head., 629; *Bank* v. *McAdams*, 106 Tenn., 404, 61 S. W., 773.

The financial condition and plans for refinancing the flooring company had been fully disclosed to all of its creditors, including complainants. They well knew that, although it was a going concern, it was indebted to insolvency. The full consideration which the flooring company received from the Boone Fork Manufacturing Company went to pay its creditors, and no officer or stockholder of said company received any advantage or profit. The fact that it conveyed all of its property in an effort to settle its debts, and for a consideration in excess of the reasonable value of same, is no evidence of fraud.

In 12 R. C. L., 485, it is said: "The fact that a transfer is of all the debtor's property does not necessarily render it fraudulent. If the conveyance be for the purpose of paying the debts, the fact that it is of all the debtor's property is evidence of good rather than bad faith."

The rule is well established that a corporation may dispose of all its assets and property by sale or transfer for a fair consideration. The consideration received takes the place of the assets and the properties sold, and the creditors and stockholders of the corporation must look to it for the satisfaction of their interests. This statement assumes that the sale or transfer is made with the approval and consent of the stockholders. There is no prohibition of a corporate sale or transfer for valuable consideration of all of the assets and property as against general creditors.

Fletcher, Cyclopedia of Corporations, section 1205, announces the rule as follows:

"In any event, as against a general creditor a corporation may dispose of its property essential to its continuance in business where it receives the full consideration therefor and has the same available in its treasury for the payment of corporate debts. The question as to the rights of creditors arises only where the sale is for stock of the purchasing company.

"Creditors cannot object to transfers by a corporation of all of its property where there is no fraud or intent to defraud, nor where the corporation remains solvent after the sale and transfer of its assets, and has sufficient property to pay all of its then existing debts."

Mr. Thompson, in his work on Corporations, announces the rule thus:

"There are still other exceptions to the general rule prohibiting corporations from taking stock in another corporation. It has long been recognized to be within the power of a corporation to sell its products to another corpora-

tion, and, under some circumstances, to sell all of its property to another corporation, and take the stock of the latter in payment or in part payment of the property so sold. This power has been recognized especially in cases where corporations were heavily indebted, and such a transaction was the only apparent means of liquidating the indebtedness. Thus, in a Rhode Island case, directors of a corporation were held to be justified in disposing of an unsalable factory on which existed a heavy indebtedness, and taking in part payment therefore the stock of another corporation. These principles are supported by other decisions. The delivery of the certificates of stock under a contract of sale of property to be paid in stock, was held to operate as a discharge for the price." 4 Thomp. on Corp. (2d Ed.), section 4064. See, also, 2 Cook Corp. (6th Ed.), section 672.

In 10 Cyc., 1261, it is said: "The inability of a corporation to deal with its property, when insolvent or in con templation of insolvency for the purpose of preferring particular creditors, whether this inability is imposed by judicial decision or by statute, does not extend so far as to prevent a corporation, even when insolvent, from making in good faith transfers or mortgages of its property to secure present advances of money to be used in paying its debts, in extricating itself from its difficulties or otherwise in continuing its business, and this is none the less so when a mortgage is made to an officer of the corporation."

In 27 C. J., 505, the rule is stated thus: "One in debt may sell his property, although the effect of the sale is to hinder creditors, if the sale is not made for that purpose,

Hicks v. Whiting.

and a debtor, although in failing circumstances or insolvent, may dispose of his property in good faith to obtain money to meet his obligations, although such sale may in fact hinder and delay his creditors. Furthermore conveyance executed for the purpose of preferring one or more creditors is in most jurisdictions a valid exercise of the grantor's power to dispose of his own property, although the necessary effect of the conveyance would be to hinder and delay other creditors in the collection of their debts. The statute only refers to an improper, illegal hindrance or delay."

In *Kingman* v. *Mowry*, 182 Ill., 256, 55 N. E., 330, 74 Am. St. Rep., 169, a debtor transferred all his property to a corporation, and it was insisted that such transfer was fraudulent. The court upheld the conveyance, and used the following language:

"It is believed that in each of the cases relied upon some circumstance of fraudulent intent, as the reservation of a trust in favor of the debtor, the design to create and administer the corporation for the mere purpose of enabling the debtor to conduct his business under the guise of a corporation and escape, even temporarily, his creditors, or some improper disposition or manipulation of the stock interest of the debtor to the injury of his creditors, or other like consideration, determined the action of the court. Certainly, if such a conveyance be made with the consent and approval of all of the creditors it would be valid. If, as here, entered into after notice to all the creditors and with the consent and approval of the greater number of them, as being the most desirable method of conserving the interests of all without any purpose or

design of defrauding any creditor, and the debtor retains the open ownership of a stock interest based upon the value of the property conveyed, and equally open, as was such property, to seizure and sale on execution against the debtor as was the transferred property, the transaction cannot be deemed fraudulent, either in fact or as a matter of law.

To the same effect is the rule announced in *Haight* v. *Smith,* 178 Mich., 392, 114 N. W., 830, 19 A. L. R., 308.

Practically all of the authorities are to the effect that, when from any cause the business of a private corporation has become unprofitable, so that it cannot be carried on without loss, even if it be insolvent, it may sell and convey its property. It does not have to go on until it loses all of its assets. The limitation is that it must not misappropriate the proceeds of such sale by distributing among its stockholders or in fraud of its creditors. 10 Fletcher, Corp, section 1207, p. 217.

*Jennings, Neff & Co.* v. *Crystal Ice Co.,* 128 Tenn., 231, 159 S. W., 1088, 47 L. R. A. (N. S.), 1058, *Vance* v. *McNabb Coal Co.,* 92 Tenn., 47, 20 S. W., 424; and *Long* v. *Fisher Typewriter Co.,* 1 Tenn. Ch. App., 668, are relied on by complainants to support the chancellor's decree.

We do not think these cases are controlling of the cause at bar. The facts are not analogous. The Crystal Ice Company was a solvent corporation, holding properties valued at $300,000. Its bonded indebtedness did not exceed $90,000. Its current indebtedness was about $13,000. The net value of its assets was approximately $200,000.

The indebtedness of Jennings, Neff & Co. was in suit when the Crystal Ice Company transferred its assets to

the Atlantic Ice & Coal Corporation, the conveyance stipulating that the latter company should assume the payment of the $13,000 current indebtedness and no other. The effect of the transfer was to exclude complainant's debt. The stock and bonds of the Atlantic Company received in payment were distributed among stockholders, principally nonresidents. The court therefore very rightfully held such transfer fraudulent, and awarded complainant a recovery.

The facts in the instant cause are quite different, because there was an honest effort made by those effecting the consolidation to take care of the debts of all the creditors of the flooring company, and no advantage was received by any creditor. The consideration for the conveyances in question went exclusively to the creditors, and no part of it was received by the stockholders.

*Vance* v. *McNabb Co.*, supra, is clearly distinguishable from the cause at bar on three grounds:

(a) In that case part of the cash consideration never passed to the old company, but went into the treasury of the new company.

(b) The new company was formed for the express purpose of acquiring the property of the old. It did not, as in the cause at bar, own other assets worth many times those conveyed to it by the insolvent company.

(c) In the present suit the entire consideration was received and distributed or held for distribution among the creditors of the old corporation.

*Long* v. *Fisher Typewriter Co.*, supra, was a case in which the Fisher Typewriter Company, who was incorporated under the laws of New Jersey, incurred liabilities

149 Tenn.—29.

while operating in Tennessee. Thereafter a Tennessee charter was procured, and all the assets of the New Jersey corporation were transferred to the Tennessee corporation. The stockholders and directors of both the old and new companies were identical. No provision was made for the creditors of the New Jersey corporation. It was held, therefore, that the new corporation so taking over the assets of the old, without provisions being made for its creditors, was liable for the debts of the old company.

These cases are not akin to the cause at bar, but present vital, distinguishing features which render them not in point.

No case has been cited by counsel for complainants, and we have not been able to find any, which holds that where an embarrassed corporation, which, while still a going concern, sells its property for a fair consideration for the purpose of paying its indebtedness, which consideration is held and distributed among its creditors, or is being held for that purpose, has been held to be guilty of fraud, or such conveyance declared fraudulent.

In the case of *Byrne & Hammer Dry Goods Co.* v. *Willis-Dunn Co.,* 23 S. D., 221, 121 N. W., 620, 29 L. R. A. (N. S.) 589, an insolvent partnership which had received $2,000 on a fire insurance policy transferred it to a corporation for $2,000 of its stock, and a third person paid in $1,000 for $1,000 of stock. A creditor of the partnership attempted to hold the corporation for its claim. The court said:

"We think, therefore, that the mere allegation that Fitch & Willis [the partners], while insolvent, each received $1,000 of the insurance money, and paid the same in with a like amount contributed by Dunn, and organized a cor-

poration, each taking a one-third of the stock of such corporation, in no manner carries with it a necessary implication of a fraudulent intent upon their part to hinder and delay the creditors of Fitch & Willis, and we cannot see wherein such organization of the corporation need, as a matter of fact, necessarily in the least hinder or delay creditors, except to the extent that an execution might not be as speedily satisfied through a levy on corporate stock as through a levy on cash; but there certainly is no rule of law forbidding a person to change his property from one kind to another, if done honestly, merely because it may be a little more inconvenient for purposes of levy and sale. . . . A long line of decisions will be found wherein it is held that, when a person, firm, or corporation shall have reorganized and continued its or their business under the form of a corporation, under such circumstances as show such corporation to be nothing more nor less than a continuation of the former business, . . . then the new corporation is but a successor of the former concern, and liable, as such, for its debts. It will be found, however, in this class of cases that assets of the corporation were practically identical with those of the concern it succeeded; but we have been unable to find a case at all parallel to this, where it has been held that a creditor could hold a corporation upon the theory that it was the successor of some prior concern.

". . . There is no claim in the pleadings but that the stock of the Fitch & Willis Company was worth all that was given for it, and such stock was issued directly to the persons paying the consideration therefor, so that there certainly is nothing in the contention that such stock was

not a good consideration for the money paid into the corporation."

The cause at bar is analogous to the foregoing case, and is distinguishable from the case of *Vance* v. *McNabb Coal Co.,* supra, upon the fact that the corporation which issued the stock was not a mere continuation of the selling concern, but that the stock received was represented by assets other than those conveyed. In the cause at bar the record shows that the Boone Fork Manufacturing Company had been in existence as the Cherokee Timber Company for a number of years prior to the purchase of the flooring company's property, and owned timber and other assets in North Carolina worth several times the assets conveyed to it by the flooring company.

The chancellor found and held that, prior to the agreement of May 6, 1921, the flooring company had committed an overt act of insolvency by placing its affairs in the hands of the creditors' committees, so as to impress its assets with a lien in favor of its creditors, and that this lien or trust rendered invalid the conveyances to the Boone Fork Manufacturing Company.

This holding was erroneous. The flooring company did not commit an overt act of insolvency in that it ceased to be a going concern by calling the creditors' meeting of May 2, 1921, for a conference looking to an adjustment of its indebtedness. But, if this were true, complainants, who signed the agreement of May 6, 1921, binding said flooring company to pursue said readjustment plan and transfer its assets, and who, with the other complainants, stood by with the full knowledge of the purpose to convey and permitted such conveyance to be made, cannot now

invoke the trust fund doctrine and reach the assets so sold upon the theory that such assets were impressed with a lien.

There is not the slightest question that the creditors' meeting of May 2 was called for the sole purpose of considering the readjustment of the flooring company's financial difficulties. This did not affect its current operations. It continued to operate in its usual way till the transfers to the Boone Fork Manufacturing Company were actually executed in September, as it had theretofore, and it was in all respects a going concern.

The trust fund doctrine is defined in *Fogg* v. *Blair*, 133 U. S., 534, 10 Sup. Ct., 338, 33 L. Ed. 721. There it is said: "That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona-fide* purchasers for a valuable consideration, except subject to the liability of being apropriated to pay that indebtedness. Such a doctrine has no existence. The cases of *Curran* v. *State of Arkansas*, 15 How., 304, 307, and *Wood* v. *Dummer,* 3 Mason, 308, give no countenance to anything of the kind."

And in *Hollins* v. *Brierfield & Co.,* 150 U. S., 384, 14 Sup. Ct., 130, 37 L. Ed., 117, it is said: " 'That doctrine only means that the property must first be appropriated to the payment of the debts of the company, before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, trans-

ferred, or mortgaged to *bona-fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence.' . . . Yet, all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien, or a direct trust.

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien; . . . but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions nor all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."

In *Chattanooga, Rome & Columbus R. R. Co.* v. *Evans,* 66 Fed., 809, 14 C. C. A., 116, the court said: "The . . . railroad company was embarrassed, and its debts exceeded its assets; but it was a going corporation, and might *bona fide* assign its property for the benefit of preferred creditors, or make a sale to a purchaser in good faith and for value. Whatever a natural person might do

an embarrassed but going corporation could do, unless prevented by some provision of its charter or inhibition found in the local law of the State. . . . In case of an absolute sale of all the property of an embarrassed corporation, the purchase price, with respect to creditors, will stand as a substitute for the property conveyed, and the creditors' rights may be enforced against that price" —citing *First National Bank* v. *North Alabama L. & M. Co.*, 91 Tenn., 12, 18 S. W., 400.

In *Bank* v. *Lumber & Manufacturing Co.*, 91 Tenn., 12, 18 S. W., 400, it was held that a corporation is not insolvent in such sense that its assets become a fixed trust fund in the hands of its officers for *pro rata* distribution among its creditors so long as it continues to be a going concern, conducting its business in the ordinary way, although its debts may greatly exceed its assets.

To the same effect is *Moseby* v. *Williamson*, 5 Heisk., 278; *Comfort* v. *McTeer*, 7 Lea, 660; *Voightman* v. *Southern Railway Co.*, 123 Tenn., 452, 131 S. W., 982; *Tradesman Publishing Co.* v. *Knoxville Car Wheel Co.*, 95 Tenn., 634, 32 S. W., 1097, 31 L. R. A., 593.

The decree of the chancellor adjudging that the conveyances from the flooring company to the Boone Fork Manufacturing Company, and the mortgage from the Boon Fork Manufacturing Company to the Commerce Trust Company, as trustee, were fraudulent, and ordering them set aside, and declaring a lien on the properties conveyed by the flooring company to the Boone Fork Manufacturing Company, and ordering said properties sold for the satisfaction of complainants' recoveries, was erroneous, and said decree is therefore reversed; but complainants are entitled to decrees against the Boone Fork Manufacturing Company for their respective recoveries in Hicks

suit No. 1, and the cause is remanded to the chancery court that such decrees may be rendered and entered against it, and for such further proceedings as may be necessary not inconsistent with this opinion.

Defendants are taxed with one-fourth of the costs of the court below, and complainants are taxed with three-fourths. Complainants are taxed with the entire costs of the appeal.

The foregoing conclusion renders it unnecessary to pass on defendants' remaining assignments of error.

Complainants' first assignment of error is that the chancellor erred in overruling exceptions of complainants and general creditors to the deed of the flooring company to the Boone Fork Manufacturing Company, and the mortgage of the Boone Fork Manufacturing Company to the Commerce Trust Company, trustee.

It is insisted by the complainants that the chancellor should have decreed that said instruments were not admissible as evidence, and should have excluded the same because not properly executed and acknowledged in accordance with the provisions of chapter 48, Acts of 1919, which requires certificate of authority of the officer taking acknowledgments in another State to be attached to the acknowledgment to entitle the acknowledged instrument to be recorded or read in evidence.

The acknowledgment of the deed from the flooring company to the Boone Fork Manufacturing Company, and of the mortgage from the Boone Fork Manufacturing Company to the Commerce Trust Company, trustee, were taken by a notary public in the State of Maryland, and no certificate of the officer's authority was attached to said acknowledgment.

This question has been directly ruled against the contention of complainants by this court in *First National Bank of Fulton, Ky., v. Howard et al.*, 253 S. W., 961. In that case it was held that chapter 48 of the Acts of 1919 does not circumscribe the authority of any officer previously authorized to take and authenticate the acknowledgment of a written instrument, but assumes the existence of probate officers in other States not recognized by our statutes, and confers upon them the authority to take and certify acknowledgments upon compliance with the provisions of the act. It was held that such was the intention clearly expressed in section 3 of the act.

The two remaining assignments of error urged by complainants may be disposed of by saying that in no event can Hambleton & Co., be held liable for complainants' debts, in view of our holding that the conveyances in question were not fraudulent and subject to be set aside. Only upon the theory that said conveyances were fraudulent, and that Hambleton & Co., participated in the fraud, could complainants recover of them.