**Shepard A. SPUNT et al., Petitioners,**

v.

**Richard G. BRUMBY, Respondent.**

Supreme Court of Tennessee.

Nov. 12, 1974.

George M. Derryberry, Miller, Martin, Hitching, Tipton, Lenihan & Waterhouse, Chattanooga, for petitioners.

James L. Banks, Banks & Bailey, Chattanooga, for respondent.

## OPINION

FONES, Chief Justice.

Petitioners, one of three defendants in the trial court, will be referred to as UCT. Respondent, plaintiff in the trial court, will be referred to herein as Brumby.

Brumby filed a general creditor's suit in the Chancery Court of Hamilton County, seeking, among other things, to make available to the general creditors of Ten-Tex Corporation (hereinafter "Ten-Tex"), assets of said corporation, attached in a prior suit and still in the hands of the Clerk and Master. In said prior suit against Ten-Tex Corporation, UCT sued out an original attachment resulting in a levy upon two U. S. patents. In the final decree in that case the attachment was sustained and the assets levied upon were subjected to the satisfaction of the money judgment. The finality of that judgment was delayed by an appeal taken by Brumby, who had intervened in said prior lawsuit, but became final on January 17, 1973, when a dismissal order was entered by the Court of Appeals for failure to file assignments of error and brief, in accord with Rule 12 of that Court.

In the instant case, on motion for partial summary judgment by UCT, the learned Chancellor held that the lien of the attachment in the earlier suit was effective from the date of levy, November 13, 1968; that UCT's right to the assets attached was

therefore prior and superior to the claims of general creditors of Ten-Tex. On Brumby's appeal, the Court of Appeals reversed the Chancellor, finding from the pleadings and record in both cases that Ten-Tex was insolvent at the time of the prior lawsuit, or, in the alternative, that upon the entry of the final judgment sustaining the attachment of the sole corporate assets of Ten-Tex, that an overt act of bankruptcy occurred. We granted UCT's petition for the writ of certiorari, and have heard oral argument.

As indicated, UCT asserts priority to the assets in the hands of the Chancery Court Clerk, by virtue of the final judgment in the prior suit sustaining the attachment lien, predating the filing of this general creditor's bill. The validity of that contention is the sole issue before the Court.

The prior lawsuit was instituted in the Chancery Court of Hamilton County by UCT. The complaint asserted a debt in the principal sum of $15,000.00, representing money loaned to Ten-Tex. It was alleged that Ten-Tex was a Tennessee corporation, with neither an office, officers, agents, or employees in the State of Tennessee, having removed the same to Georgia, but that it owned two U. S. patents, of which the Cobble Division of the Singer Company, located in Chattanooga, was the licensee of said patents and paid royalties to Ten-Tex of approximately $5,000.00 per year. The complaint alleged that Ten-Tex was in default in payment of its excise and franchise taxes due the State of Tennessee, that it was in violation of T.C.A. § 48–114, in that it did not have an office in Tennessee, and was not presently doing business in Tennessee and had not designated a resident agent in Tennessee, upon whom service of process might be had. An original attachment was sought to be levied upon the two U. S. patents, by execution of said levy upon the Cobble Division of the Singer Company. The attachment was issued and levied upon said patents upon the 13th day of November, 1968.

Ten-Tex answered, admitting that while it formerly had offices in Chattanooga it now had a factory in Chatsworth, Georgia, and no longer had offices or employees in the State of Tennessee. It denied that it was in default in the payment of franchise or excise taxes in Tennessee and admitted the debt of $15,000.00. It denied that it was the owner of the patents, asserting that it had transferred and assigned all of its right, title and interest therein to Brumby, on October 17, 1968, in partial satisfaction of a debt secured by a security interest in the patents and royalties.

Brumby moved for and was granted permission to intervene. On November 16, 1971, he filed an intervening petition alleging that Ten-Tex Corporation had ceased to do business and its charter had been forfeited; that he was not an officer of the corporation, nor a director, having resigned in 1968. He alleged that he was the owner of the patents that had been attached and had been the owner since October 6, 1961; that the attachment had been wrongfully issued, should be dismissed, and that he was entitled to damages for the issuance of a wrongful attachment. At the hearing of the cause, Ten-Tex was not represented, and judgment for the principal amount of the debt and interest was entered against Ten-Tex. The case proceeded to trial between UCT and Brumby on the issue of whether the ownership of the patents was in Ten-Tex or Brumby. The Chancellor took the case under advisement and subsequently filed a memorandum opinion, finding that Ten-Tex had assigned the patents to Brumby Metals, Inc., who, in turn, assigned same to Brumby; that Brumby was the President of Ten-Tex at the time of the transfers; that said assignments were not recorded in the patent office and were therefore void, pursuant to 35 U.S.C.A. § 261; further, that Ten-Tex had filed a document with the Securities Exchange Commission in 1963, subsequent to the assignment to Brumby Metals and Brumby, wherein it asserted that it owned

the patent in question and that said corporation had carried it as an asset in its financial statements, and that the income from the royalties was credited to the corporation on its income statement for the years subsequent to the alleged assignments. The Chancellor held that the assignments were void as to UCT and that it was entitled to satisfy its indebtedness from the assets attached and sustained the attachment by a decree entered March 6, 1972. Brumby's petition to rehear was overruled and a final decree entered May 24, 1972. As heretofore noted, Brumby's appeal to the Court of Appeals was dismissed on January 17, 1973. The remaining value of the two U. S. patents in the hands of the Sheriff were advertised for sale on May 9, 1973. On May 4, 1973, Brumby filed an intervening petition, seeking to have the court convert the cause to a general creditor's bill. At a hearing on said motion on May 16, 1973, that request was denied. However, on May 8, 1973, Brumby had filed the complaint as a general creditor's bill, which is now under consideration. Pursuant to a prayer in said general creditor's bill the Chancellor issued a restraining order cancelling the sale scheduled for May 9, and restraining the withdrawal of any royalty funds collected by the Clerk.

The sustaining of the attachment in the final judgment rendered in the prior lawsuit against Ten-Tex, in which Brumby intervened, relates back to the date of the levy of the attachment, November 13, 1968. Gibson's Suits in Chancery, 5th Ed., Sec. 84(2). In applying the trust fund doctrine available to general creditors upon the insolvency of a corporation, the Court of Appeals infers that, in the prior lawsuit, it was developed that the only assets of Ten-Tex were the patents. Neither the issue of insolvency or the status of the assets and liabilities of Ten-Tex was litigated in the prior lawsuit, and neither appellate courts nor trial courts can make findings based on speculation unsupported by appropriate allegations and proof. The Court of Appeals then says:

"To remove any doubt that Ten-Tex is an insolvent corporation, we hold the fact a final judgment was entered wherein the sole corporate assets were attached to satisfy a debt owing a general creditor, constitutes an overt act of insolvency on the part of Ten-Tex."

If it be conceded that it is appropriate to find, in the absence of any pleading to the effect that insolvency did occur on that date, said date is too late to be of benefit to Brumby and the general creditors, since UCT's lien on the patents was effective from and after the 13th day of November, 1968. Directly in point is the case of Bank v. Lumber & Manufacturing Co., 91 Tenn. 12, 18 S.W. 400 (1891), wherein this Court held that an attachment bill filed prior to some positive act of insolvency, such as the filing of a bill to administer the assets or the making of a general assignment, or a permanent cessation to do business, would entitle the holder of the attachment lien to priority over general creditors seeking to invoke the trust fund doctrine. The principles established in said case have been reaffirmed in a number of subsequent cases, and have never been overruled.

The judgment of the Court of Appeals is reversed and that of the Chancery Court affirmed. The cause will be remanded for further proceedings consistent with this opinion. The costs of this appeal are adjudged against the respondent.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.